UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROHAN D. DOUGLAS,

      Plaintiff,

v.                     CASE NO:  8:09-cv-2145-T-33TBM

UNITED STATES OF AMERICA,

      Defendant.
_____/

**ORDER**

    This cause comes before the Court pursuant to Plaintiff Douglas's Motion for Summary Judgment as to Liability Only on Counts I and II (Doc. # 35), Defendant United States' Motion for Summary Judgment (Doc. # 45), and the respective responses in opposition thereto (Docs. # 46, 47).  In addition, the United States, with leave of Court, filed a Reply in support of its Motion for Summary Judgment (Doc. # 51).

I.   <u>Facts</u>

    In 1964, Douglas was born in St. Kitts, British Virgin Islands, to non-citizen parents.  In 1977, Douglas was admitted to the United States as a lawful permanent resident. On October 16, 1981, Douglas's mother, Larisene Weiner, became a naturalized U.S. citizen.  Douglas was seventeen years old at the time his mother became a United States citizen, was a child born out of wedlock, and was a lawful permanent resident

of the United States.  As such, Douglas gained "derivative citizenship" by way of his mother's naturalization and became a United States citizen by operation of law also on October 16, 1981.[1]

In 1986, Douglas was convicted in Virginia of grand larceny.  In 1987, Douglas was convicted in South Carolina of larceny of a vehicle.  In 1988, the United States initiated removal proceedings against Douglas as an alien who had committed two crimes involving moral turpitude.[2]  During those removal proceedings, Douglas erroneously conceded that he was an alien and that he was removable as charged, but requested a § 212(c) waiver[3] from the judge to remain in the United

---

[1]Under the immigration laws that existed in 1981, a child born out of wedlock to alien parents and who was not legitimated by the father automatically becomes a United States citizen when the mother naturalizes if the child is a lawful permanent resident, is unmarried, and is a minor.  8 U.S.C. § 1432(a)(3)-(5)(Sec. 321 of Immigration and Nationality Act of 1952).  "A child's acquisition of citizenship on a derivative basis occurs by operation of law and not by adjudication.  No application is filed, no hearing is conducted, and no certificate is issued when such citizenship is acquired."  In re Julio Agusto Fuentes-Martinez, 1997 WL 219496, Interim Decision 3316, 21 I&N, Dec. 893, 896 (BIA 1997).

[2]Under 8 U.S.C. § 1227(a)(2)(A)(ii), the United States shall remove from this country aliens who have committed two crimes involving moral turpitude that are not part of the same scheme of criminal conduct.

[3]8 U.S.C. § 1182(c)(repealed 1996).

States, which was granted.  A transcript of those proceedings was placed into Douglas's Alien file ("A-file") by the end of 1990.

In 1989, Douglas was found guilty in Virginia of misdemeanor sexual abuse.  In 1996, Douglas was found guilty in Florida of grand theft.  On September 27, 2005, Douglas was arrested in Florida on a felony charge of driving with a suspended license.

On September 28, 2005, Bureau of Immigration and Customs Enforcement ("ICE") Special Agent John O'Malley checked the government's Central Index System ("CIS")[4], which reported that Douglas was an alien.  That day, O'Malley ordered Douglas's A-file, which he received on October 6, 2005. During October and November 2005, O'Malley collected court records for Douglas's 1996 conviction of the grand theft charge and available records for Douglas's 1989 sexual abuse charge.

On November 30, 2005, O'Malley filled out a Record of Deportable/Inadmissible Alien, Form I-213, stating that Douglas was a removable alien under Section 237(a)(2)(A)(ii)

---

[4]The CIS is a government database that keeps records of individuals who are or were aliens and who have encountered the government's immigration services in some capacity.

3

of the Immigration and Nationality Act ("INA") because he had committed two crimes involving moral turpitude that did not arise out of a single scheme of criminal conduct.  The two crimes listed were Douglas's 1987 conviction for larceny of a vehicle and his 1996 conviction for grand theft.  On the Form I-213, O'Malley also mentioned Douglas's 1989 sexual abuse charge, but did not include that charge as one of the two crimes involving moral turpitude.

On that same date, ICE issued a warrant to arrest Douglas and a Notice to Appear[5] alleging he was an alien and charging him with removability for committing two crimes involving moral turpitude.  On December 1, 2005, ICE placed an immigration hold on Douglas, who at the time was being held in Hillsborough County Jail on local charges.  On that same date, Douglas was transferred to Pinellas County Jail in relation to his felony driving with a suspended license charge.

On December 2, 2005, Douglas would have been able to post bond for the underlying charge, but elected not to do so because of the immigration detainer placed on him by ICE.

---

[5]When a removable alien is detained, ICE prepares a Notice to Appear.  A Notice to Appear is essentially an administrative arrest warrant that is not reviewed by a neutral magistrate.  See, e.g., United States v. Abdi, 463 F.3d 547, 551 (6th Cir. 2006).

4

Douglas remained in Pinellas County Jail until January 18, 2006, when he was released to ICE custody.  ICE agents served the warrant to arrest and the Notice to Appear on Douglas on January 18, 2006.  Also on January 18, 2006, Immigration Enforcement Agent Adolphus Teel transported Douglas from Pinellas County Jail to the Tampa ICE office.  Douglas alleges that while en route, he told Agent Teel that he was a United States citizen and that he should not be in deportation proceedings.  Douglas further alleges that Agent Teel told him that other officers had looked into the matter already and determined that he was not a citizen.  Agent Teel told Douglas to speak to a supervisor at Bradenton Detention Facility, where he was due to be transported.

On or about January 19, 2006, after arriving at Bradenton Detention Facility, Douglas began writing a letter that he submitted on January 24, 2006, to his assigned deportation officer, Officer Carlos Tolentino.  In the letter, which he attached to an alien communication form, Douglas claimed in paragraph 1 to have been "automatically naturalized" when his mother became a naturalized citizen.  See Doc. # 35, Exh. 7(b).  Officer Tolentino responded to the alien communication form on January 25, 2006.  In his response, he wrote "Talk to the judge."  Id.

5

The Department of Homeland Security, through ICE and Enforcement and Removal Operations, held Douglas in various detention facilities while awaiting deportation between January 18, 2006, and September 25, 2006, because the government alleged that Douglas was an alien who had committed two crimes involving moral turpitude. Between March and August, 2006, Douglas had eleven hearings before three different immigration judges, but Douglas never claimed he was a citizen. Instead, he conceded he was an alien and that he was removable as charged.

In September 2006, Douglas's wife contacted Larisene Weiner, Douglas's mother. Ms. Weiner forwarded a copy of her naturalization certificate to Douglas's wife.

On September 19, 2006, the government raised Douglas's citizenship claim in removal proceedings before an immigration judge. At the hearing, Douglas stated that he had filled out an N-600 form, which is an application for a certificate of citizenship. The judge and the Department of Homeland Security trial attorney told Douglas that he had to file his N-600 with the United States Citizenship and Immigration Services ("USCIS").

Douglas remained incarcerated without bond while the government attempted to locate and obtain Ms. Weiner's A-file

from St. Croix.  On September 22, 2006, Douglas returned to court, at which point the judge granted him bond.  Douglas handed a completed N-600 form to the immigration court on September 22, 2006.  The form was marked as received by the court, and counsel for the government was present when the N-600 form was handed over.

Douglas alleges that upon his release from custody on September 25, 2006, he promptly went to the post office and mailed the N-600 form dated September 18, 2006, to the USCIS.

Between September 22, 2006, and February 19, 2008, no one within the Department of Homeland Security, including, but not limited to, special agents, officers, analysts or attorneys, investigated whether Douglas qualified as a derivative U.S. citizen through Ms. Weiner's naturalization in 1981.  During that time, Douglas was aware that the removal proceedings continued against him.

On February 19, 2008, Douglas was arrested by local authorities for being a felon in possession of a firearm and for driving with a license suspended or revoked.  At that time, the government's CIS reported that Douglas was not a citizen.[6]  Also on February 19, 2008, ICE issued an

_____

[6]The Court notes that throughout the removal proceedings against Douglas from 2006 to 2008, the government's CIS

immigration detainer on Douglas.

On February 20, 2008, ICE Deportation Officer Burt Wehying filled out a Record of Deportable/Inadmissible Alien, Form I-213, for Douglas. In the I-213, Wehying noted Douglas's most recent arrest and Douglas's earlier crimes. Wehying also noted that removal proceedings against Douglas continued. On this same date, ICE issued a warrant to arrest Douglas and took him into custody.

When he was brought into the Tampa ICE office for processing on February 20, 2008, Douglas showed Officer Wehying his mother's naturalization certificate, his N-600 application, and his bond paperwork and stated that he was a United States citizen. ICE officials made copies of these documents. Officer Wehying, however, did not obtain Douglas's A-file or Douglas's mother's A-file. Officer Wehying did not call Department of Homeland Security offices in Miami to speak with someone who may have been able to locate information within the A-files of Douglas or his mother. Douglas was in ICE custody in Tampa for less than twelve hours. After Douglas left the Tampa office, Officer Wehying did not further

_____

reported that Douglas's mother, Ms. Weiner, was not a citizen despite her naturalization in 1981. In fact, as of the filings of the parties' motions for summary judgment, Ms. Weiner still showed in the CIS as not a citizen.

investigate whether Douglas was a United States citizen.

That same day, on or about February 20, 2008, Douglas was transported from Tampa to Broward Transitional Center and then to Krome Service Processing Center in Miami where he told deportation officers in both locations that he was a citizen and showed them his mother's naturalization certificate, his N-600 application, and his bond paperwork.

The Department of Homeland Security, through ICE and Enforcement and Removal Operations, held Douglas in various detention facilities while awaiting deportation between February 20, 2008, and May 1, 2008, because the government alleged that Douglas was an alien who had committed two crimes involving moral turpitude.  During this second detention, Douglas did not appear before an immigration judge.

On March 13, 2008, Douglas filled out another N-600 application for a certificate of citizenship and mailed it to USCIS.  USCIS received that application on March 25, 2008, and indicated that it would take one year to process his application.

In April 2008, Officer Eduardo Roman saw a completed N-600 form dated *2006* in Douglas's A-file and forwarded the same via e-mail to USCIS supervisor Meryl Finnerty on April 28, 2008 for her review.  Meryl Finnerty responded to Officer

9

Roman on April 29, 2008, "It appears that the subject derived on the date of his mother's naturalization on October 16, 1981 pursuant to INA 321(a)(3) as a child born out of wedlock who was not legitimated after birth.  I would just speak with the subject to ascertain that he is the step-child not the biological child of George Weiner.  The N-600 was filed in Tampa, he can pursue it there once he's released." Doc. # 45, Exh. 1, Part 3, U.S. 630.

On May 1, 2008, Douglas was released from ICE custody and was put on electronic monitoring pending the processing of his N-600 application.  During the processing of Douglas's application in August 2008, a N-600 form dated September 18, 2006, was found in Douglas's A-file by USCIS Officer Edly Vliet while reviewing the file.  On August 1, 2008, USCIS asked the Library of Congress for assistance in determining whether Douglas was legitimated by his father under the applicable laws of St. Kitts.  In September 2008, the Library of Congress provided a response that Douglas was, in fact, not legitimated under the laws of St. Kitts.  On November 14, 2008, Officer Vliet interviewed Douglas and then issued him a certificate of citizenship indicating that Douglas became a citizen of the United States on October 16, 1981.  On November 14, 2008, Douglas was released from electronic monitoring.

10

Douglas filed this action on October 21, 2009, seeking relief pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-80 ("FTCA").  Douglas has alleged a claim for false imprisonment (Count I), malicious prosecution (Count II) and negligence (Count III).  Among the issues in this case are whether ICE law enforcement agents falsely imprisoned and maliciously prosecuted Douglas and whether they were negligent in investigating his immigration case and not recognizing his derivative citizenship.  Douglas alleges that the United States, through ICE, had actual or constructive knowledge of Douglas's status as a derivative American citizen at all times he was detained, restricted, or otherwise subject to removal proceedings.

Douglas was incarcerated from January 18, 2006, through September 25, 2006, and again between February 20, 2008, and May 1, 2008.  In the time periods when he was not incarcerated, Douglas alleges that he was restrained in his freedom of movement in that he was restricted to the state of Florida, the county of Hillsborough and/or his own house at various dates and times.  The government admits that Douglas was incarcerated, restricted, or otherwise subject to removal proceedings for the time periods alleged, but denies that it is liable.

11

Douglas now moves for summary judgment as to liability only on Counts I (false imprisonment) and II (malicious prosecution).  The United States moves for summary judgment as to the case in its entirety.

II.  Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  See id.  When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  See id.

12

III. <u>Analysis</u>

The United States, as a sovereign, is immune from suit unless it chooses to waive its immunity.  <u>See</u> <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980).  The FTCA waives the United States' sovereign immunity for the negligent or wrongful act or omission of an employee of the government under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  28 U.S.C. § 1346(b).  The United States is liable in the same manner and to the same extent as a private individual under like circumstances, but is not liable for interest prior to judgment or for punitive damages.  28 U.S.C. § 2674.

In claims under the FTCA, 28 U.S.C. § 1346(b), the "law of the place" where the alleged tortious activity occurred provides the substantive law for evaluating the cause of action  <u>Id.</u>  Courts interpret "the law of the place" to mean the law of the state where the alleged tort occurred.  <u>See</u> <u>Ochran v. United States</u>, 273 F.3d 1315, 1317 (11th Cir. 2001).  All the events underlying Douglas's Complaint occurred in Florida.  <u>See</u> Doc. # 1, ¶¶ 40-79. Accordingly, Florida law applies here.

13

A.   <u>Malicious Prosecution</u>

In a malicious prosecution action, a plaintiff must establish that: (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.  <u>Alamo Rent-A-Car, Inc. v. Mancusi</u>, 632 So.2d 1352, 1355 (Fla. 1994).

The government argues that Douglas's malicious prosecution claim fails because the United States had probable cause to initiate and continue removal proceedings against Douglas and that the government had no malice during these proceedings.   For a malicious prosecution claim to succeed under Florida law, the prosecution must have been initiated and continued both without probable cause and with malice.  <u>See</u> <u>Beizer v. Judge</u>, 743 So.2d 134, 136 (Fla. 4th DCA 1999). The Court notes that the parties do not contest that the other

14

elements of a malicious prosecution claim have been met.

    i.  <u>Probable Cause</u>

Pursuant to 8 U.S.C. § 1357(a)(2), an officer of the "Service" (Department of Homeland Security, ICE, Office of Detention and Removal Operations, etc.) is authorized to arrest any alien without a warrant if he has "reason to believe" the alien is in the United States illegally. In order to obtain a standard administrative arrest warrant for violations of immigration law, immigration officers draft and present a charging document known as a Notice to Appear, which sets forth the factual and legal basis for the immigration arrest, along with any supporting documents to the signatory officer for review. <u>Id.</u>; <u>see also</u> 8 C.F.R. § 287.5. United States courts have consistently held that the phrase "reason to believe" is equivalent to probable cause. <u>See</u> <u>United States v. Cantu</u>, 519 F.2d 494 (7th Cir.), <u>cert. denied</u>, 423 U.S. 1035 (1975); <u>Babula v. INS</u>, 665 F.2d 293 (3d Cir. 1981); <u>Au Yi Lau v. INS</u>, 445 F.2d 217 (D.C. Cir.), <u>cert. denied</u>, 404 U.S. 864 (1971).

"Probable cause" means a reasonable ground of suspicion supported by circumstances strong enough in themselves to warrant a cautious person in belief that the named suspect is guilty of the offense charged. <u>Johnson v. State</u>, 660 So.2d

15

648, 654 (Fla. 1995)(citations omitted);see also City of Clearwater v. Williamson, 938 So.2d 985, 989 (Fla. 2d DCA 2006). The question of probable cause is an objective one, asking whether a "reasonable man would have believed [probable cause existed] had he known all of the facts known by the officer." See Rankin v. Evans, 133 F.3d 1425, 1433 (11th Cir. 1998). Inquiry into the reasonableness of an officer's perceptions of critical facts supporting an arrest does not focus upon facts not available to him at the time. City of St. Petersburg v. Austrino, 898 So.2d 955, 959 (Fla. 2d DCA 2005)(citing Anderson v. Creighton, 483 U.S. 635 (1987)). "'By the same token, however, it must charge him with possession of all the information reasonably discoverable by an officer acting reasonably under the circumstances.'" Id. (quoting Sevigny v. Dicksey, 846 F.2d 953, 957 n.5 (4th Cir. 1988)). "'A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest.'" Id. (quoting BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir. 1988)).

Where the facts are not disputed, probable cause is a question of law for the court. See Endacott v. Int'l Hospitality, Inc., 910 So.2d 915, 922 (Fla. 3d DCA 2005)("When the facts relied upon to show probable cause are undisputed,

16

'the existence or nonexistence of probable cause is a pure question of law to be determined by the court under the facts and circumstances of each case.'" (citations omitted)).

The government argues in its Motion for Summary Judgment that ICE had probable cause to initiate removal proceedings in 2005. The government asserts that the undisputed material facts demonstrate that when ICE issued its Notice to Appear against Douglas on November 30, 2005, it had the following information: (1) Douglas was born in St. Kitts; (2) Douglas was admitted into the United States as a lawful permanent resident in 1977; (3) ICE records reflected that Douglas was not a citizen; (4) Douglas was convicted of grand larceny in Virginia in 1986; (5) Douglas was convicted of larceny of a vehicle in South Carolina in 1987; (6) Immigration and Naturalization Service ("INS") had instituted removal proceedings against him in 1988 as an alien who had committed two crimes involving moral turpitude, but was allowed to remain in the United States because the immigration judge granted Douglas's request for a waiver; (7) Douglas was found guilty of sexual assault in Virginia in 1989, and information in the arrest report for that crime indicated Douglas was not a citizen; and (8) Douglas was convicted of grand theft in Florida in 1996. The United States submits that these facts

17

demonstrate that ICE had probable cause to initiate removal proceedings against Douglas.

Douglas argues that, although he had not directly asserted his derivative citizenship, the government had constructive knowledge of the same as the government could have easily determined Douglas's derivative citizenship from his A-file. Douglas asserts that the only contents of his A-file in 2005 would have been papers related to his Legal Permanent Resident application (including Douglas's birth certificate) and the documents from the 1988-89 deportation proceedings. Douglas additionally alleges that the agent relied on the CIS, which incorrectly showed that Ms. Weiner was not a citizen.

There is a dispute as to whether the agent looked at Ms. Weiner's citizenship status on the CIS. This dispute, however, is irrelevant. The Court finds that the totality of the circumstances requires a finding of probable cause as to the 2005 Notice to Appear. Specifically, there was information in the file that Douglas was not a citizen, even if Douglas's mother was correctly identified as a United States citizen that would not have conclusively meant that

Douglas was a derivative citizen,[7] and even Douglas's birth certificate, which lists no name of father, does not necessarily, in and of itself, mean that Douglas was not ever legitimated by his father.  Even if the agent had consulted the CIS and seen that Ms. Weiner was a U.S. citizen, the additional information available did not make Douglas's derivative citizen obvious or even so probable as to require additional investigation.[8]  Accordingly, the Court finds that the agent had probable cause to issue the Notice to Appear in 2005.

Even though this Court finds that the government had probable cause to initiate the removal proceeding in 2005, a lawful detention can become unlawful at the point when the continued detention is no longer reasonable.  Caban v. United States, 728 F.2d 68 (2d Cir. 1984).  On January 18, 2006,

_____

[7]The parties agree that, under immigration law, circumstances may arise where a parent is a citizen and a child of that parent is not a citizen.  (Doc. # 53, p. 17, ¶ p).

[8]In addition, the Court notes that law enforcement officers are afforded some latitude for error.  See Austrino, 898 So.2d 955, 958 (Fla. 2d DCA 2005)(citing Lee v. Geiger, 419 So.2d 717, 719 (Fla. 1st DCA 1982)).  However, their mistakes "'must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability.'"  Id. (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)).

19

Douglas informed Immigration Enforcement Agent Adolphus Teel that he was a United States citizen.  In addition, on January 24, 2006, Douglas submitted a letter to Officer Tolentino explaining, in not so many words, that he had derivative citizenship.  <u>See</u> Doc. # 35, Exh. 7(b).  In the letter, Douglas informed the officer that:

> [U]nder Immigration Law, I became a naturalized citizen when my mother was naturalized.  At the time she did, I was a minor child under the age of 18.  This can be verified by your own records:  My mother's name is: Larisene Ilona Weiner who resides at the following address: [redacted].  This claim on it [sic] own exempts me from Deportation proceedings, because I became automatically naturalized when my mother did.

<u>Id.</u>

On January 25, 2006, Officer Tolentino responded to Douglas on the alien communication form attached to Douglas's letter, "Talk to the judge."  <u>Id.</u>

The Court finds that at this point probable cause dissipated, and it was no longer reasonable to continue to detain Douglas.  <u>Caban</u>, 728 F.2d 68 ; <u>see</u> <u>also</u> <u>Harris v. Lewis</u> <u>State Bank</u>, 482 So.2d 1378, 1382 (Fla. 1st DCA 1986)("Where it would appear to a 'cautious man' that further investigation is justified before instituting a proceeding, liability may attach for failure to do so, especially where the information is readily obtainable, or where the accused points out the

20

sources of the information."); see Mathis v. Coats, 24 So.3d 1284 (Fla. 2d DCA 2010)(holding that while probable cause existed at the time of arrest, plaintiff should have been given leave to amend her complaint to pursue her claim as to whether she was unlawfully detained after, and if, probable cause ceased to exist to justify her continued detention).

At this point, the government had actual knowledge of and an obligation to investigate Douglas's claim of derivative citizenship.  Unfortunately, any investigation of Douglas's claim during this process generally ended with a check of the CIS, which reflected erroneously that Douglas's mother was not a naturalized citizen.[9]  The government, however, may not rely on the fact that checking the CIS reflected that Douglas's mother had not been naturalized.

Florida case law is clear that law enforcement may not rely upon incorrect or incomplete information to establish probable cause when they are at fault in permitting the records to remain uncorrected.  Albo v. State of Florida, 477 So.2d 1071, 1075 (Fla. 3d DCA 1985)(citing United States v.

---

[9]The Court notes that the government had the additional option of pulling Douglas's mother's A-file to confirm her naturalization on October 16, 1981. In fact, Officer Wehying agreed that the best source of information as to Ms. Weiner's naturalization would be her A-file.  Wehying Depo., Doc. # 38, p. 26 line 20 - p.27 line 12.

Hensley, 469 U.S. 221 (1985)); State v. White, 660 So.2d 664, 667-68 (Fla. 1995)("It is repugnant to the principles of a free society that a person should ever be taken into police custody because of a computer error precipitated by government carelessness. As automation increasingly invades modern life, the potential for Orwellian mischief grows." (citations omitted)).

"[L]aw enforcement officials are collectively responsible for keeping those [official] channels free of outdated, incomplete, and inaccurate warrant information. That the police now rely on elaborate computerized data processing systems to catalogue and dispatch incriminating information enhances rather than diminishes that responsibility." Albo, 477 So.2d at 1076 (quoting People v. Ramirez, 668 P.2d 761, 765, 768 (Cal. 1983)). "If negligent or inadequate recordkeeping is excused merely because a fellow officer is dispatched to make an arrest or, by analogy, effectuate a search without actual knowledge of the negligence, inaccuracies, or inadequacies in the recordkeeping procedure, important safeguards now in place to protect the rights guaranteed by the Fourth Amendment will be lost." Id.

The Court notes that the United States' argument, that in removal proceedings, foreign birth creates a presumption of

alienage, which shifts the burden of production to the respondent to produce evidence of citizenship, is not relevant to this Court's probable cause analysis.  The United States cites to <u>Scales v. INS</u>, 232 F.3d 1159, 1163 (9th Cir. 2000), and <u>Murphy v. INS</u>, 54 F.3d 605, 609 (9th Cir. 1995).  That Douglas had the burden of proving citizenship at his removal hearing does not, however, negate the fact that ICE did not have the authority to detain him if it knew or should have known that he was a U.S. citizen.  See <u>Nguyen v. United States</u>, No. 3:00-CV-0528-R, 2001 WL 637573, at *10 (N.D. Tex. June 5, 2001).

Having found a lack of probable cause as of January 25, 2006, the Court need not address the parties' arguments regarding whether Douglas claimed he was a citizen during the bond hearings on March 1 and 2, 2006, before the immigration court at Bradenton or regarding whether Douglas properly filed his N-600 application with USCIS in 2006.

ii.  <u>Malice</u>

The government argues that it had no malice during these proceedings, and, therefore, Douglas's malicious prosecution claim fails.  The element of malice in a malicious prosecution claim may be proven in one of two ways, either by showing actual malice in fact or by inferring legal malice.   See

23

Miami-Dade County v. Asad, 2009 WL 605330, at *4 (Fla. 3d DCA 2009)(citing Olson v. Johnson, 961 So.2d 356 (Fla. 2d DCA 2007)(holding that in an action for malicious prosecution, it is not necessary for a plaintiff to prove actual malice; legal malice is sufficient)). Under Florida law, legal malice is inferred when there is a finding of lack of probable cause, even where actual malice is not shown. Alamo Rent-A-Car, 632 So.2d at 1357 ("In an action for malicious prosecution it is not necessary for a plaintiff to prove actual malice; legal malice is sufficient and may be inferred from, among other things, a lack of probable cause."); see also Reed v. State, 837 So.2d 366, 368-69 (Fla. 2002); Asad, 2009 WL 605330, at *4; Morgan Int'l Realty, Inc. v. Dade Underwriters Ins. Agency, Inc., 617 So.2d 455 (Fla. 3d DCA 1993).

Therefore, having found a lack of probable cause, the Court finds that legal malice is inferred as a matter of law. Accordingly, this Court finds that summary judgment is due to be granted in favor of Douglas as to the liability of the United States on the malicious prosecution claim.

B.   <u>False Imprisonment</u>

The essential elements of a cause of action for false

24

imprisonment[10] are: (1) the unlawful detention and deprivation of liberty of a person, (2) against that person's will, (3) without legal authority or color of authority, and (4) which is unreasonable and unwarranted under the circumstances. Mathis, 24 So. 3d at 1289.  Whereas in a malicious prosecution case, the plaintiff must establish an absence of probable cause as an element of the tort; in a false imprisonment case, the existence of probable cause is an affirmative defense. Daniel v. Village of Royal Palm Beach, 889 So.2d 988, 990 (Fla. 4th DCA 2004).[11]

    The United States argues that Douglas's false

---

[10]In Florida, there is no distinction between the torts of false arrest and false imprisonment.  Johnson v. Weiner, 19 So.2d 699, 700 (Fla. 1944).

[11]Further distinction between a claim for false imprisonment and a claim for malicious prosecution relates to the regularity of the legal process under which the plaintiff's interests have been invaded.  Erp v. Carroll, 438 So.2d 31, 40 (Fla. 5th DCA 1983)(citing W. Prosser, Law of Torts 835 (4th ed. 1971)).  In a malicious prosecution claim, while the prosecution may have been commenced and carried out maliciously, the imprisonment is under process regular and in legal form issued by lawful authority and the resulting imprisonment is not false.  Id.  On the other hand, false imprisonment is a trespass committed by an unlawful arrest and confinement without legal authority.  Id.  "Notwithstanding that the two causes of action are distinct, ... the recovery on one cause of action is generally held to bar recovery on the other when both relate to the same factual event."  Id. (citations omitted); see also Johnson, 19 So.2d at 700 (quoting Kress & Co. v. Powell, 180 So. 757, 762 (Fla. 1938)).

imprisonment claim fails because the government detained
Douglas under legal authority. Douglas argues that because
the Notice to Appear in the instant case is an executive
warrant that is not reviewed by a neutral magistrate, the
arrest must be considered as warrantless. The argument
continues that probable cause is constitutionally required in
warrantless arrest cases to protect society from unreasonable
intrusions from the state. See LeGrand v. Dean, 564 So.2d
510, 512 (Fla. 5th DCA 1990).

While the Court agrees that probable cause is
constitutionally required in warrantless arrest cases, the
premise that an arrest made pursuant to an executive warrant
is a warrantless arrest is not supported by Florida law.
Douglas cites to El Badrawi v. Department of Homeland
Security, 579 F. Supp. 2d 249 (D. Conn. 2008), in support of
his argument that the arrest in the instant case must be
considered as warrantless. The court in the El Badrawi case
found that the Connecticut case law implicitly recognizes the
distinction between warrants issued by neutral magistrates and
those issued by non-neutral executive officials. Id. at 275.
The same cannot be said for Florida case law, and Douglas does
not cite to any such Florida authority. Furthermore, courts
in at least two other states with false imprisonment law

26

similar in relevant respect to Florida law have found that ICE agents who detained suspects without a warrant issued by a neutral magistrate did so under legal authority, thereby barring the detainee's false imprisonment claim.   <u>See</u> <u>Valencia-Mejia v. United States</u>, No. CV 08-2943, 2008 WL 4286979, *5 (C.D. Cal.   Sept. 15, 2008)(noting that immigration officers have a "lawful privilege" to arrest aliens, which bars a false imprisonment claim under California law); <u>Tovar v. United States</u>, No. 3:98-cv-1682, 2000 WL 425170, *7-8 (N.D. Tex. Apr. 18, 2000)(noting that INS agents had "legal authority" to detain plaintiff under INA, barring false imprisonment claim under Texas law). As such, this Court finds that the United States has established that Douglas's arrest was made under legal authority, and the United States is entitled to summary judgment on Douglas's claim for false imprisonment.[12]

C.   <u>Negligence</u>

Although under the FTCA, the federal government waives its immunity regarding negligent or wrongful actions committed

---

[12]Because the Court finds that Douglas has not met his burden of establishing that a reasonable trier of fact could find that the government detained him without legal authority, the Court need not address the United States' argument that Douglas's claim for his 2006 detention is barred by the statute of limitations.

by its employees within the scope of their official duties, there is a "discretionary function exception" to the FTCA's waiver of immunity.[13]  <u>Nguyen</u>, 556 F.3d at 1250-51; <u>see also</u> 28 U.S.C. § 2680(a).  The discretionary function exception precludes government liability for claims based on the performance or failure to perform discretionary functions, meaning conduct that involves "an element of judgment or choice" and that is "susceptible to policy analysis." <u>United States v. Gaubert</u>, 499 U.S. 315, 322 & 325 (1991).

The United States argues that its investigation of Douglas's derivative citizenship claim is a discretionary function that precludes Douglas's negligence claim.  This Court agrees.

Courts apply a two-part test for determining whether certain government activity falls within the discretionary function exception. <u>Id.</u> at 322.  First, a court considers the nature of the conduct and determines whether it involves "an element of judgment or choice." <u>Mesa v. United States</u>, 123 F.3d 1435, 1437 (11th Cir. 1997)(quoting <u>Gaubert</u>, 499 U.S. at 322-23).  Second, if the conduct at issue does in fact involve

---

[13]The discretionary function exception does not apply to malicious prosecution or false imprisonment claims.  <u>Nguyen v. United States</u>, 556 F.3d 1244 (11th Cir. 2009).

the exercise of judgment, the court must determine whether
that judgment is grounded in considerations of public policy.
Gaubert, 499 U.S. at 322-23.   Furthermore, when government
policy allows a government agent to exercise discretion, "it
must be presumed that the agent's acts are grounded in policy
when exercising that discretion."   Hughes v. United States,
110 F.3d 765, 768 (11th Cir. 1997)(quoting Gaubert, 499 U.S.
at 324).[14]

Considering this standard, the Court finds that there is
little doubt that the investigation conduct at issue in this
case falls within the discretionary function exception.   The
conduct of an investigation is inherently discretionary in
that it necessarily requires judgment or choice as to the
objectives, strategies and means.   See Mesa, 123 F.3d at 1438;
see also Nguyen v. United States, No. 02-10013, 2003 WL

---

[14]Government conduct, however, does not involve an element
of judgment or choice, and thus is not discretionary, if "a
federal statute, regulation, or policy specifically prescribes
a course of action for an employee to follow, because the
employee has no rightful option but to adhere to the
directive."  Gaubert, 499 U.S. at 322.  Douglas does not cite
to any mandatory policies or regulations that withdrew
judgment or discretion on the part of the ICE agents in
verifying Douglas's citizenship claim.   ICE first issued a
memorandum outlining steps for agents to take when confronted
by an immigration detainee's claim to citizenship on May 23,
2008, after Douglas had been released from immigration
detention.

1922969, at *1 (5th Cir. Mar. 31, 2003)("[d]ecisions to investigate, how to investigate and whether to prosecute generally fall within this [discretionary function] exception."). Second, the challenged conduct here involved decisions grounded in social, economic, and political policy. ICE is tasked with enforcing federal immigration laws, which involves ensuring that certain criminal aliens in this country are removed. Operating with limited resources, ICE must weigh various policy considerations in deciding which suspected aliens to detain, how to detain them, and how to investigate claims of citizenship by detained aliens. Douglas's allegations that ICE agents negligently failed to ascertain or verify his citizenship status fall squarely within the discretionary function exception. See also Rodriquez v. United States, No. 10-13872, 2011 WL 537550 (11th Cir. Feb. 17, 2011)(applying discretionary function exception to detention facility's decisions concerning type of exercise equipment to provide and its supervision of detainees' use of such equipment); Hughes, 110 F.3d 765 (applying discretionary function exception where plaintiff had alleged that the postal service was negligent by failing to provide adequate lighting or security to patrons using the twenty-four-hour access).

Accordingly, the United States' motion for summary

30

judgment as to Count III (negligence) is due to be granted as the negligence claim is barred by the discretionary function exception to the FTCA.

IV.   Conclusion

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Plaintiff Douglas's Motion for Summary Judgment as to Liability Only on Counts I and II (Doc. # 35) is **DENIED** as to Count I (false imprisonment) and **GRANTED** as to liability for Count II (malicious prosecution) as outlined above.

(2)   Defendant United States' Motion for Summary Judgment (Doc. # 45) is **GRANTED** as to Count I (false imprisonment) and Count III (negligence) and **DENIED** as to Count II (malicious prosecution).

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 22nd day of June, 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record