UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROHAN D. DOUGLAS,

    Plaintiff,

v.                          CASE NO.: 8:09-cv-2145-VMC-TBM

UNITED STATES OF AMERICA,

    Defendant.
_____/

## PLAINTIFF'S TRIAL BRIEF AS TO DAMAGES ONLY

Plaintiff, ROHAN D. DOUGLAS, by and through his undersigned attorneys, respectfully submits this trial brief as to damages only and sets forth as follows:

### I. Factual Background

Liability has already been established in this case. Thus, this trial brief presumes that this Court is familiar with the underlying facts. The most significant portion of the underlying facts, as determined by the Court, is that Mr. Douglas was wrongfully incarcerated on two separate occasions – first, between January 25, 2006, and September 25, 2006, and again between February 20, 2008, and May 1, 2008. The total amount of days spent incarcerated based on these time parameters is **343 days**.

Additionally, Mr. Douglas spent approximately six months on house arrest/electronic monitoring. Specifically, Mr. Douglas spent the dates of May 15, 2008, - November 14, 2008, or **183 days**, with a curfew and an electronic bracelet.

In between the two dates of incarceration, Mr. Douglas was on bond for a total of **511 days.**

The total amount of time that the Government wrongfully restricted Mr. Douglas's liberties

was **1,037 days** (approximately two months shy of **3 years**).

## II. Deprivation of Liberty Damages

### A. Incarceration

Obviously, the bulk of Mr. Douglas's damages stems from his periods of incarceration. Our system of justice is built upon the premise that 100 people should go free before one is wrongfully incarcerated. This is because, in part, prison conditions are so abhorrent that only those that are truly guilty (or in the case of aliens, truly aliens), should have to suffer the ignominy of prison life.

Mr. Douglas's damages for his time in prison are not static or linear. That is to say, with each day that passed, his hopelessness and despair increased exponentially. Thus, the dollar value of his first day of incarceration is nowhere near the value of his last day of incarceration. Indeed, not only should the value of the time in jail compound as the days pass, but the second incarceration was an even greater blow to Mr. Douglas's mental state.

As the Court noted in its June 22, 2011, Order Granting Summary Judgment (Doc. # 68), in February 2008, Mr. Douglas had every conceivable piece of paper with him to show that he was a United States citizen. His pleas were totally ignored, however, even though those same papers had garnered his release a year and a half earlier. Mr. Douglas's despair in 2008 was so severe that he went on a hunger strike in an attempt to get someone to listen to him. This simply led to a night in solitary confinement.

Thus, his first day incarcerated in 2008 was much greater than his last day of incarceration in 2006. Based on these factors and the jury awards for comparable incarcerations, Mr. Douglas believes that his time spent incarcerated is worth at least **$11,000,000.00**. These damages include the mental anguish and deprivation of liberty he suffered at the hands of the Government. It

2

must be noted that this amount is less than the smallest damage award listed in Section V below regarding prior jury verdicts (assuming the verdict amount is extrapolated to a period in prison of 343 days). While there is no perfect way of measuring damages of this sort, it is an inescapable truth that few things are more disgraceful than being wrongfully imprisoned by your own government. Perhaps the only thing more disgraceful than being wrongfully imprisoned by your own government is being wrongfully imprisoned by your own government *twice*.

### B. House Arrest/Electronic Monitoring

After establishing for a second time his citizenship, ICE opted to place Mr. Douglas on electronic monitoring and house arrest. He was confined to his home with a set curfew and had to wear an electronic ankle bracelet everywhere he went. While he was at least in the comfort of his own home, Mr. Douglas had to contend with the embarrassment and discomfort of an unnecessary ankle bracelet. Essentially, Mr. Douglas's imprisonment simply moved to different confines.

This deprivation of liberty was admittedly less intrusive than strict incarceration. Mr. Douglas believes that, at a minimum, this Court should allow for **$500,000.00** for the time that Mr. Douglas spent on electronic monitoring.

### C. Release on Bond

The least restrictive deprivation of liberty took place between September 25, 2006, and February 20, 2008. It was during this time period that Mr. Douglas was on bond. He was told that he could not leave the state of Florida and faced the possibility that any arrest could land him back in a detention facility – a fear that ultimately proved to be true. Although this was the longest period of deprivation, it was also the least intrusive. Thus, Mr. Douglas believes that this Court should allow **$100,000.00** for these restrictions.

### III. Other Damages

#### A. Post-Release Emotional Distress

Mr. Douglas has suffered from flashbacks, nightmares, lost sleep, depression and general anger since his release from restrictions in 2008. Mr. Douglas believes that these damages are valued at approximately **$50,000.00**.

#### B. Future Emotional Distress

Based on Mr. Douglas's post-release distress to date, it is clear that he will continue to suffer periodically in the future with flashbacks, nightmares, lost sleep, depression and anger. Mr. Douglas believes that these damages are valued at approximately **$50,000.00**.

#### C. Income

##### 1. Past Income

Mr. Douglas is self-employed. He works in the remodeling of homes. Based on the government's actions, Mr. Douglas has had to start and restart his business on several occasions, building up his client base each time. Although difficult to estimate, Mr. Douglas believes he has lost **$40,000.00-$50,000.00** in income to date.

##### 2. Future Income

Future income is even more difficult to estimate because there are so many factors involved. What is clear, though, is that Mr. Douglas has had great difficulty in finding a steady stream of clients. Mr. Douglas's business originates almost exclusively from word of mouth. Because he was out of the workforce for so long, he lost and must rebuild that important revenue stream again. Mr. Douglas estimates that his future lost income is **$40,000.00-$50,000.00**.

### D. Medical Damages

#### 1. Past Damages

Mr. Douglas entered 2006 with a history of minor hypertension. By the time he ended his incarceration in 2008, his hypertension had grown significantly worse. He was treated at various jail facilities for hypertension throughout his stays and continues to take significantly greater doses of medication than he did previously. Indeed, earlier this year, Mr. Douglas was hospitalized for three days for severe hypertension. Placing a dollar figure on this medical condition is difficult. Mr. Douglas values the worsening of his medical condition at **$100,000.00**.

#### 2. Future Damages

Unfortunately, hypertension is a silent killer. There is no way to know how hypertension will affect Mr. Douglas in the future, but there is no doubt that he will continue to suffer from hypertension and that it could ultimately lead to a premature death. Mr. Douglas places a value of **$500,000.00** for the increased strain he will feel over the remainder of his life.

### E. Marriage/Family Distress

Mr. Douglas's incarceration had a significant effect on his marriage and the time he spent/communicated with his children. Since his release, financial problems have contributed further to issues in his marriage. Currently, Mr. Douglas is separated from his wife and divorce papers have been filed. Additionally, Mr. Douglas's minor children did not understand why it was that their father disappeared from their lives for such a significant period of time. His relationship with his children has been severely impacted in that the children now have no desire to see him. Again, the dollar amount of damage is extraordinarily difficult to calculate, but Mr.

Douglas believes that the Government's contribution to the downfall of his marriage and the negative affect on his relationship with his children is worth, at a minimum, **$500,000.00**.

### F. Lost Property

Mr. Douglas's car was impounded and he lost tools totaling greater than **$20,000.00**. He also owes approximately **$15,000.00** on a truck that has since been repossessed.

## IV. Total Damages

When all of the aforementioned damages are tallied, Mr. Douglas believes that his damages are *at least* valued as follows:

| | |
|---|---|
| **Incarceration** | $11,000,000.00 |
| **House Arrest/Electronic Monitoring** | $500,000.00 |
| **Release on Bond** | $100,000.00 |
| **Post Release Distress** | $50,000.00 |
| **Future Distress** | $50,000.00 |
| **Past Lost Income** | $40,000.00-$50,000.00 |
| **Future Lost Income** | $40,000.00-$50,000.00 |
| **Past Medical Damages** | $100,000.00 |
| **Future Medical Damages** | $500,000.00 |
| **Marriage/Family Distress** | $500,000.00 |
| **Lost Property** | $35,000.00 |
| **Total** | $12,915,000.00-$12,935,000.00 |

**Plaintiff is Statutorily Limited to Pre-Suit Demand of <u>$4,000,075.00</u>.**

## V. Prior Verdicts

This Court, through her law clerk, asked the undersigned to submit any prior jury/bench verdicts. The instant case is a unique case, both in its magnitude and its fact pattern. The undersigned is unaware of any cases of this magnitude or exact type reaching a verdict.

There are cases, however, that involve the detention of an individual for a certain period of time. These cases, though not factually identical to the instant case, may be helpful in determining an appropriate verdict amount for the time Mr. Douglas actually spent incarcerated. It should also be noted that there are numerous cases wherein the Plaintiff received no damages. Those cases, however, are the result of juries finding no liability. Because this Court has already determined that the Government was liable, the zero-dollar cases are of no relevance.

1. **ALLAN S. JONES vs. SHERIFF OF BROWARD COUNTY**

    92-6913-CIV-Zloch – S.D. Fla.

    TOPIC: FALSE IMPRISONMENT/CIVIL RIGHTS VIOLATION.

    **SUMMARY:**

    Verdict: $37,000 for Plaintiff on August 21, 1995.

    JUDGE: Lurana S. Snow

    RANGE AMOUNT: $1-$49,999

    STATE: Florida

    COUNTY: Broward

NATURE OF INJURY: Injuries sustained were the violation of civil rights for unlawful search and seizure and state torts of false arrest/imprisonment and battery. The length of illegal detention was approximately four hours which included an illegal strip search.

Time of incarceration: **4 hours.**

95 FJVR 10-7, 1995 WL 684469 (S.D.Fla.) (Verdict and Settlement Summary)

**NOTE:**

If the damage award in this case was extrapolated out, Plaintiff's $4,000,075.00 request would be met within *eighteen days* of his initial incarceration. Were the same award issued for a period of 343 days of incarceration, the award would equal **$76,146,000.00.**

2. **GAIL AND ALLEN GORDON v. LINDA FROST, PETER BENTON AND THRIFT DRUG CO. D/B/A TREASURY DRUG**

   87A-1017 – Georgia Superior Court

   DATE OF VERDICT/SETTLEMENT: November 21, 1988

   TOPIC: MALICIOUS PROSECUTION - DRUG STORE CUSTOMER - DEA ARREST

   FALSE IMPRISONMENT INTENTIONAL TORT FALSE ARREST CONSORTIUM

**SUMMARY:**

Result: Verdict: $220,000 Breakdown: $200,000 Gail 20,000 Allen (consortium)

Time of incarceration: **6 hours**.

JAS GA Ref. No. 50610WL, 1988 WL 895283 (Ga.Super.) (Verdict and Settlement Summary).

**NOTE:**

If the damage award in this case was extrapolated out, Plaintiff's $4,000,075.00 request would be met within *five days* of his initial incarceration. Were the same award issued for a period of 343 days of incarceration, the award would equal **$274,399,657.00.**

3. **JOANN PEAKS & ERIC JACKSON v. DRUG EMPORIUM, INC.**

   E41490 – Georgia State Court

   DATE OF VERDICT/SETTLEMENT: June 14, 1996

TOPIC: FALSE ARREST - FORGED CHECK - FALSE IMPRISONMENT FALSE IMPRISONMENT INTENTIONAL TORT LIBEL AND SLANDER CONSORTIUM

**SUMMARY:**

Result: Verdict: $243,500. Breakdown: $4,000 compensatory, $82,000 pain & suffering, $150,000 punitive damages, and $7,500 consortium.

Time of incarceration: **14 hours**.

**NOTE:**

If the compensatory damage award in this case was extrapolated out, Plaintiff's $4,000,075.00 request would be met within *thirty days* of his initial incarceration. Were the same award issued for a period of 343 days of incarceration, the award would equal **$50,567,804.00**.

JAS GA Ref. No. 54385WL, 1996 WL 33100369 (Ga.Super.) (Verdict and Settlement Summary).

### 4. TONYA CAMP v. WAL-MART

99-CV-156 – N.D. Georgia

DATE OF VERDICT/SETTLEMENT: August 16, 2000

TOPIC: MALICIOUS PROSECUTION - FALSE IMPRISONMENT - SHOPLIFTING - FALSE IMPRISONMENT - PUNITIVE DAMAGES - BIFURCATED TRIAL

**SUMMARY:**

Result: Verdict: $125,000. Breakdown: $25,000 compensatory damages and $100,000 punitive damages.

Time of incarceration: **2 hours**.

**NOTE:**

If the compensatory damage award in this case was extrapolated out, Plaintiff's $4,000,075.00 request would be met within *fourteen days* of his initial incarceration. Were the same award issued for a period of 343 days of incarceration, the award would equal **$102,900,000.00**.

JAS GA Ref. No. 56383WL, 2000 WL 33312083 (Unknown Fed. Ct. (Ga.)) (Verdict and Settlement Summary).

### 5. BRASS v. COUNTY OF LOS ANGELES

**TOPIC:**
Synopsis: Plaintiff arrested and detained in case of mistaken identity
Case Type: Police Misconduct; Excessive Force
DOCKET NUMBER: TC0122087
STATE: California
COUNTY: Los Angeles
Verdict/Judgment Date: October 25, 2002
**SUMMARY:**
Verdict/Judgment: Plaintiff
Verdict/Judgment Amount: $55,000

Plaintiff alleged that his due process rights were denied because the Sheriff's Department failed to abide by a 1988 injunction that forbade booking warrant subjects until all records searches were completed. Plaintiff also maintained that due process was denied because he was not arraigned promptly and because the Sheriff's Department failed to promptly release him when the superior court ordered it. Plaintiff asserted that he was falsely imprisoned from 2:00 p.m. Sunday when the results of his C11 number inquiry came back to show that he could not be the warrant subject.

Time of Incarceration: **39 hours**.

**NOTE:**

If the compensatory damage award in this case was extrapolated out, Plaintiff's $4,000,075.00 request would be met within *one hundred eighteen days* of his initial incarceration. Were the same award issued for a period of 343 days of incarceration, the award would equal **$11,609,230.00.**

JAS GA Ref. No. 56383WL, 2000 WL 33312083 (Unknown Fed. Ct. (Ga.)) (Verdict and Settlement Summary).

*Plaintiff is not suggesting that these cases are binding on this Court or factually similar to the instant case. Rather, the above-cited cases are used merely to illustrate that juries can be deeply offended by wrongful incarcerations and have previously handed down verdicts that would greatly exceed the amount Plaintiff is seeking if those plaintiffs had been incarcerated for the amount of time that Mr. Douglas was incarcerated.*

**VI. Conclusion**

Based on the representative sampling of jury awards, Plaintiff's request for damages is eminently reasonable. Based on the undersigned's research, in terms of damages, the instant case is *by far* the most egregious in terms of the amount of time Mr. Douglas spent incarcerated. Had the above plaintiffs spent 343 days incarcerated, their jury awards would have ranged from **$11,609,230.00** (*Brass v. City of Los Angeles*) to **$274,399,657.00** (*Gordon v. Treasury Drug*). Because federal statutes required Mr. Douglas to place a monetary amount when he submitted his pre-suit demand, and because those same statutes limit Mr. Douglas's recovery at trial to that pre-suit demand, Mr. Douglas is limited to collecting $4,000,075.00 in this action. Although we believe his damages far exceed that pre-suit demand, Mr. Douglas believes that

this is a reasonable amount to compensate him for all he lost throughout this ordeal. Consequently, Mr. Douglas is seeking **$4,000,075.00** in compensatory damages in the instant case. Plaintiff acknowledges that this is a large sum of money, but the most egregious known case of wrongful government detention in American jurisprudence warrants a significant verdict.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the above-foregoing has been electronically filed with the Clerk of Court by using the CM/ECF system to **PAUL E. WERNER, Esq. and J. MARCUS MEEKS,** *Attorneys for Defendant United States of America,* United States Department of Justice, Torts Branch, Civil Division, P.O. Box 7146, Ben Franklin Station, Washington, D.C. 20044 on June 24, 2011.

s/Matthew L. Wilson
Matthew L. Wilson, Esquire
Florida Bar No. 0086819
mwilson@mtblaw.com
**MARSHALL THOMAS BURNETT**
200 N. Pierce St., First Floor
Tampa, Florida 33602
(813) 221-2525 (telephone)
(813) 227-8900 (facsimile)
Attorneys for Plaintiff